NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUMMER P., *Appellant*,

*v.*

SHIRLEY M., THOMAS M., K.H., *Appellees*.

No. 1 CA-JV 15-0421
FILED 6-9-2016

Appeal from the Superior Court in Maricopa County
No. JS517279
The Honorable James P. Beene, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Law Offices of Margo Shorr, Phoenix
By Margo A. Shorr
*Counsel for Appellees Shirley M. and Thomas M.*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

¶1        Summer P. (Summer) appeals from the juvenile court's order severing her parental rights to her daughter, K.H.   For the following reasons, we affirm the decision of the juvenile court.

## FACTUAL AND PROCEDURAL HISTORY

¶2        K.H. was born in September 2000 in Tucson.   Summer was not married at the time of K.H.'s birth and no father was listed on her birth certificate.  Appellees Thomas M. and Shirley M. (Thomas and Shirley) are Summer's maternal grandparents and K.H.'s maternal great-grandparents. K.H. went to live with Thomas and Shirley at their home in Tucson when she was three months old; she lived with them until about the age of four years.  After K.H. turned four, Summer and her then-boyfriend picked up K.H. and took her to live with them in their apartment in Tucson.  K.H. lived with Summer and the boyfriend for several months, but in January 2005 Summer gave K.H. back to Thomas and Shirley.  K.H. lived with Thomas and Shirley for about a year and a half, from January 2005 until May 2006.  In May 2006, Summer again picked up K.H. and kept her until January 2007.  In January 2007, Summer returned K.H. to Thomas and Shirley and she has lived with them continuously thereafter.  Summer provided no financial support for K.H. during the entire time period from January 2007 to the time of the severance trial in August 2015.

¶3        In 2009, Summer signed a consent to guardianship form and Thomas and Shirley established guardianship of K.H.  In 2012 Thomas, Shirley and K.H. moved to Phoenix and the guardianship was transferred to Maricopa County.

¶4         In February 2015 Thomas and Shirley filed a private severance petition seeking to terminate Summer's parental rights to K.H.[1] Subsequently, Summer filed a petition to terminate the guardianship. The juvenile court held a severance trial over the course of three days in 2015. K.H., who turned fifteen just prior to the last day of trial, requested the juvenile court to sever Summer's parental rights so that she could be adopted by Thomas and Shirley.

## DISCUSSION

¶5         "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998) (citations omitted). We view the facts in the light most favorable to sustaining the juvenile court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13, 107 P.3d 923, 928 (App. 2005). We do not reweigh the evidence, because "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). The juvenile court may terminate a parent-child relationship if the petitioner proves by clear and convincing evidence at least one of the statutory grounds set forth in Arizona Revised Statutes (A.R.S.) § 8-533(B) (2014). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

### A.  Abandonment

¶6         Abandonment is a ground for severance pursuant to A.R.S. § 8-533 (B)(1). "Abandonment" is defined in A.R.S. § 8-531 (1), which provides:

---

[1] Thomas and Shirley also sought to terminate the parental rights of K.H.'s putative father, John Doe. Subsequently, T.T. was identified as a potential father and the severance petition was amended. John Doe and T.T. were served by publication and the juvenile court severed John Doe and T.T.'s parental rights on the ground of abandonment. No alleged father is a party to this appeal.

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

Summer argues that she did not abandon K.H. because Thomas and Shirley "interfered" and did not permit her to have a relationship with her child. Sufficient evidence supported the juvenile court's finding that Summer abandoned K.H., however. K.H. continuously resided with Thomas and Shirley from 2007 until the time of trial. During that entire time, Summer provided no financial support for K.H. She provided K.H. with no gifts from 2010 to 2014. Summer testified that she gave K.H. a scrapbook at a court hearing in 2014 and gave her a kite sometime in 2014. The last time she sent her a card was in 2008. K.H., an accomplished gymnast, had numerous gymnastics competitions which were open to the public; Summer attended just one competition from 2012 to the time of trial. Summer maintained phone contact with Shirley (not K.H.) but from 2012 to the time of trial did not request visitation with K.H. The record is clear that Summer made only minimal efforts to communicate with K.H. and made no effort at all to support her or provide normal supervision for the vast majority of K.H.'s life.

¶7            The record also supports the juvenile court's finding that Thomas and Shirley did not attempt to restrict Summer's access to K.H. Summer testified that Thomas and Shirley would not allow K.H. to speak with her on the phone, and speculated that if she tried to visit K.H. "I'm sure they'd call the police on me." Thomas, however, testified that after 2009 Summer never requested to have visitation with K.H. and that he and Shirley never refused to allow K.H. to have contact with Summer. The evidence thus does not support Summer's argument the abandonment finding cannot be sustained because Thomas and Shirley had "unclean hands."

### B. Best Interests

**¶8** Summer argues that insufficient evidence supported the juvenile court's finding that severance was in K.H.'s best interest. We disagree. To establish that severance is in a child's best interests, the court must find either that the child will benefit from the severance or that the child would be harmed by the continuation of the relationship. *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App. 1998). Evidence of an adoptive plan is evidence of a benefit to the child. *Id.* Here, the evidence was showed that K.H. had been living continuously with Thomas and Shirley for over eight years in a healthy, stable, loving home environment. Moreover, she had lived with them for most of her life and considered them her parents. They wanted to adopt her and she wished to be adopted by them. Accordingly, we find no error in the juvenile court's finding that severance was in K.H.'s best interests.

### C. The Trial Court Did Not Abuse its Discretion By Failing to Appoint New Counsel for Summer and Denying Her Request to Continue the Severance Trial

**¶9** On the first day of the severance trial, Summer made oral motions to the juvenile court requesting the court to appoint new counsel for her and requesting a continuance. When the court asked Summer why she wanted new counsel, she told the court that she did not think she and her attorney, Ms. Davis, were "seeing eye to eye," and that there was "conflict and friction" in her relationship with her attorney. Ms. Davis avowed to the court that she had not realized Summer was unhappy with her representation until two days before the start of trial. K.H., Thomas, and Shirley objected to the continuance. The trial court denied the request for new counsel and a continuance, finding that Summer had failed to establish that there had been an irreconcilable conflict between herself and her attorney. The court noted that in reaching its decision, it had considered Summer's rights and interests as well as the necessities of judicial economy. Citing *Daniel Y. v. ADES*, 206 Ariz. 257, 77 P.3d 55 (App. 2003), the court then informed Summer that she had a right to represent herself and advised her of the dangers of self-representation. After a short discussion with Ms. Davis, Summer decided to proceed with Ms. Davis's representation.

**¶10** We review the trial court's decision to deny Summer's request for new counsel for an abuse of discretion. *See State v. Torres*, 208 Ariz. 340, 343, ¶8, 93 P.3d 1056, 1059 (2004). We likewise review the grant or denial

of a continuance for an abuse of discretion. *In re Maricopa County Sup. Ct. No. MH2003-000240*, 206 Ariz. 367, 369, ¶ 10, 78 P.3d 1088, 1090 (App. 2003).

¶11 An indigent parent in Arizona has the right to appointed counsel in a severance proceeding. A.R.S. § 8-221(B) (2010). A parent is not entitled to counsel of choice, or to a meaningful relationship with his or her attorney. *See State v. Moody*, 192 Ariz. 505, 507, ¶ 11, 968 P.2d 578, 580 (1998). In the criminal context, our supreme court requires the court to evaluate several factors designed to balance the rights and interests of a defendant with judicial economy in making its decision about appointing new counsel. *Id.* These factors include:

> whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*State v. LaGrand*, 152 Ariz. 483, 486-87, 733 P.2d 1066, 1069-70 (1987). On appeal, Summer asserts that the juvenile court abused its discretion in denying her request for new counsel in part because Ms. Davis had "objectively demonstrated her ineffectiveness" by "not even submitting a list of witnesses or exhibits." In *John M. v. Arizona Dep't of Economic Sec.*, 217 Ariz. 320, 324, ¶ 11, 173 P.3d 1021, 1025 (App. 2007), we held that the test for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to severance proceedings and that, like in criminal cases, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." A parent must establish both incompetence and prejudice. *Id.*

¶12 Here, the juvenile court properly considered the relevant factors in denying Summer's motion for a new attorney, and once the court denied the motion for new attorney a continuance was not necessary. The record does not demonstrate an irreconcilable conflict between Summer and Ms. Davis, and the motions were untimely. Moreover, Summer's complaints about Ms. Davis do not rise to the level of incompetence, nor does she show that the outcome of the trial would have been different had Ms. Davis done anything differently. We find no abuse of discretion.

## D. The Juvenile Court Did Not Abuse its Discretion By Failing to Recuse Itself

¶13        Summer also argues that the juvenile court abused its discretion by denying her request for the court's recusal.  Thomas and Shirley's first witness, Alex M., testified that she volunteered as K.H.'s youth minister at a church in Gilbert.  When the juvenile court judge heard the name of the church, he informed the parties that he attended the same church, but that he did not know Alex M. or K.H.'s family.  Summer requested the judge to recuse himself, and he declined to do so.  We find no abuse of discretion.  A party seeking the trial court's recusal must prove bias or prejudice by a preponderance of the evidence and we will presume that the court is impartial.  *State v. Carver*, 160 Ariz. 167, 172, 771 P.2d 1382, 1387 (1989) (citations omitted).  The trial judge's membership in the same church as the witness, someone he did not know, did not create a sufficient appearance of bias to require his recusal.  Accordingly, we find no abuse of discretion.

## CONCLUSION

¶14        For the foregoing reasons, the juvenile court's severance order is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA